B. M. TORGERSON, A. E. Ringey, Carl Meyer and Alfred P. Johnson, Voters and Taxpayers of Golden Valley School District No. 65 of Williams County, North Dakota, Respondents, v. GOLDEN VALLEY SCHOOL DISTRICT NO. 85 OF WILLIAMS COUNTY, NORTH DAKOTA, and Fred Jorgenson, P. J. Hamers, and O. A. Haerstad, as the School Board of Said School District, and John Van Wagenen as Clerk of the School Board of Said School District, and Ira Rush, Appellants.

(171 N. W. 626.)

**Schools and school districts — removal of school to new location — vote necessary for removal.**

Where a consolidated school is formed and a site chosen by the electors of the district, acting under § 1190, Compiled Laws of 1913, such school cannot be removed from the location so selected without a two-thirds vote of the electors, proceeding under §§ 1184 and 1185 of the Compiled Laws of 1913.

Opinion filed February 8, 1919.   Rehearing denied March 15, 1919.

Appeal from District Court of Williams County, *Fisk*, J.

Affirmed.

*George H. Stillman* (*John A. Van Wagenen*, of counsel), for appellants.

The policy expressed in § 1188, Compiled Laws 1913, is that no child shall be deprived of that education and an equal opportunity to

the same even though the taxpayers are unwilling to vote to remove or build a school site. State v. Mostead (N. D.) 158 N. W. 349.

*Greene & Stenersen,* for respondents.

The public schools of North Dakota are under the control of the legislature, and the respective school boards have no other powers than those expressly conferred upon them. Pronovost v. Brunnette, 162 N. W. 300; Kretchmer v. School Board, 158 N. W. 993.

The right to hold an election cannot exist, or be lawfully exercised, without an expressed grant of power by the Constitution, or by the legislature acting under constitutional authority. 15 Cyc. 316; State v. Taylor, 12 L.R.A. 202; State v. Gardner (S. D.) 54 N. W. 606; People v. Palmer, 51 N. W. 999; Brewer v. Davis, 49 Am. Dec. 706; State v. Jenkins, 43 Mo. 261; Stephen v. People, 89 Ill. 337; Forest v. Batavia, 61 Ill. 99.

BIRDZELL, J. This action is one involving the validity of an election held in the defendant school district on May 22, 1918, for the purpose of changing the location of the consolidated school therein. Prior to the consolidation in August, 1917, three schools, located in different parts of the district, were conducted. Under the authority of § 1190, Compiled Laws of 1913, an election was held on August 1, 1917, resulting in the consolidation of the schools, and the site of the consolidated school was determined to be a site already owned by the district, near the village of Temple. In the month of May following, a petition was presented to the school board, signed by more than one third of the electors of the district, asking that an election be called to submit the question of the removal or change of site of the consolidated school from the village of Temple to a site in section 16 in the same township. In pursuance of the petition an election was called and held, at which a majority voted in favor of the site in section 16.

The only question considered by the district court, and the only question that is here for consideration, is as to the legality of the last election. The proper solution of this question depends upon the construction of certain sections of the School Code. Section 1184 of the Compiled Laws of 1913 authorizes the board of directors of common school districts to call an election to vote upon the question "of the selection, purchase, exchange, or sale of a schoolhouse site (or) of the

erection, removal, or sale of a schoolhouse," whenever, in the judgment of the board, it is desirable or necessary to the welfare of the schools in the district; and it is also therein provided that such elections may be called in response to petitions signed by one third of the voters of the district. It is contended by the appellant that this section authorized the election which was held in May, and that consequently the site of the consolidated school was legally changed from the village of Temple to the site in section 16. The respondents, on the other hand, contend that no authority exists for the changing of the site of the consolidated school, and to support this contention they rely upon § 1190 of the Compiled Laws of 1913. This section is of more recent origin than § 1184. It provides for the holding of elections to determine the questions of conveying pupils at the expense of the district to and from schools already established in common school districts, of consolidating two or more schools, and of selecting a site and erecting a suitable building or of making suitable additions to buildings already erected to accommodate pupils of the schools to be vacated. The argument is advanced that, since § 1184 originally applied only to such schools as were customarily maintained within common school districts, before authority existed for the establishment of consolidated schools, the section has no application to the location or relocation of schools of the latter sort. It is claimed that §§ 1184 and 1185 are inconsistent with the policy of consolidation as expressed in the statutes; but we are not convinced that there is such inconsistency as to require us to hold the former sections wholly inapplicable to proceedings looking to the removal or relocation of a consolidated school.

The effect of an election under § 1190 of the Compiled Laws of 1913, where the majority of the votes are in the affirmative, is to create a consolidated school and to select a site therefor. The provisions of the statute bearing upon the operation of a consolidated school clearly contemplate that there shall be but one such school within a district, and the powers of the board of directors, with respect to the selection, purchase, exchange, or sale of a site or the removal of a schoolhouse from the site of a consolidated school, are certainly no more extensive than the powers of the same board with respect to similar matters affecting ordinary schools; and the same is true as to the voters of the district. Sections 1184 and 1185 provide for these matters, and, in

our opinion, these sections are as applicable to consolidated schools as to any other schools within a common school district. Upon the hypothesis that these sections are applicable, it becomes necessary to determine whether or not they authorized the election held in the instant case, and the further proceedings pursuant thereto.

The school having been located upon the site near the village of Temple, in August, 1917, it could only be removed therefrom by the combined action of the board and the voters of the district, acting under the authority of §§ 1184 and 1185 of the Compiled Laws of 1913. Section 1184 seems to authorize a vote upon any question which may arise in connection with the locating or relocating of a school within a district. The section immediately following provides that it shall require a vote of two thirds of the voters present and voting at a meeting to order the removal of a schoolhouse, and that a schoolhouse so removed cannot be again removed within three years from the date of such meeting. We are of the opinion that the expression "removal of the schoolhouse," as used in this section, implies all of the proceedings incident to the relocation of a school, including the purchase of a site and the erection thereon of a school building. The meaning of such statutes is not to be gathered from exact grammatical analysis and definition. The plain meaning is that schools are to be moved only with the consent of the voters, and that the best interests of the schools demand that the right be exercised under prescribed limitations as to time. To give full effect to the election held in 1917, as a result of which the schools were consolidated and the site chosen near the village of Temple, it must be held that that election located the consolidated school; and in order that the school may be removed from the location so established it is requisite that the proposition should receive the two-thirds vote required for removal. Not having received that vote, the consolidated school within the defendant district is still legally located upon the site near the village of Temple. For like interpretations of similar statutes, see State ex rel. Jay v. Marshall, 13 Mont. 136, 32 Pac. 648; Kessler v. State, 146 Ind. 221, 45 N. E. 102. See also Stayton v. Butcher, 16 Okla. 232, 82 Pac. 726. While so located the board has no authority to expend moneys incident to the improvement of a site to which they are not, and may never be, authorized to remove the school. It follows from this that the order appealed from is correct, and it is affirmed.

GRACE, J. (dissenting). I respectfully dissent from the conclusion arrived at by my associates. It is conceded that in the election held in August to consolidate the school that but two questions were submitted, —that of consolidation of the school and the selection of the site. It is our understanding that the question of selecting suitable buildings or of making suitable additions to buildings already erected to accommodate pupils of schools to be vacated was not submitted. That at said election the schools of the district were consolidated there can be no doubt, and that at the same election a site for the consolidated school was selected is equally without doubt. After such election, another election was legally brought on to select another site than the one selected at the election on August 1; the latter election was held in the month of May of the following year. The election in May was to select a new site in section 16, which is in the center of the school district. The election was held for this purpose and a majority of the voters were in favor of selecting a site in section 16. The election having been legally called and held, the effect of this election is the selection of a new site for the consolidated school, and upon which the school board, when duly authorized by the electors of the school district, may build a new central school building. The effect of the election in May is to select a new site, to discontinue the site selected at the election held in August of the previous year, and effects a change of site from that designated at the first election to that in section 16. It is our contention under §§ 1184 and 1185 that to select, purchase, exchange, or sell a schoolhouse site, or purchase, exchange, or sell a *schoolhouse,* a majority vote is all that is required. It is so specifically provided in § 1185. The language of the statute in this regard is so plain it would seem to be impossible to misunderstand it. It is as follows: "If a majority of the voters present at such meeting shall by vote select a schoolhouse site or shall be in favor of the purchase, exchange or sale of the *schoolhouse,* as the case may be, then the board shall proceed to carry out the decision of the voters of the district."

To remove a schoolhouse from where it is located to some other point within the district is an entirely different question, and requires a higher percentage of the electors participating in the election in order to effect a removal thereof. The language of the statute which governs the removal of a schoolhouse from where it is located to another point

within the district is as follows: "Provided it shall require a vote of two thirds of the voters present and voting at such meeting to order the removal of the *schoolhouse, and such schoolhouse so removed cannot again be removed within three years from the date of such meeting;* and, further, if the question of removing the *schoolhouse* fails to carry, then the question of removing such schoolhouse cannot again be raised within one year."

The object of the statute last quoted is to prevent the too frequent removal of the school building or schoolhouse. Hence it is observed that if at an election for that purpose it is voted to remove the schoolhouse, and it is so removed, it cannot be removed again for three years. If, however, the question failed to carry and there was no removal of the schoolhouse, then the question of removing the schoolhouse cannot again be presented within one year. The election above referred to, which was held in May, effected the selection of a new site or another site than that selected at the election in August. It received the required number of votes, to wit, a majority of the electors of the district participating in that election. The effect of the election in May was to choose a new site on section 16 and discontinue the old site selected in the August election. The majority of the voters at the last election expressed themselves favorably to the site on section 16. It constitutes and is the legal site upon which the consolidated school building should be built when the building of the same has been duly authorized according to law. It seems to us the meaning of the sections of the statute quoted are plain and easily understood. There is no room for construction. In my opinion, the only legal site now existing is that selected by the majority of the electors at the latter election held in May following the former election.